# SEALED

ORIGINAL
FILED

# UNITED STATES DISTRICT COURT

AUG 1 4 2019

for the

Eastern District of California

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

United States of America

v.

Manish PATEL

*Defendant(s)*

)
)
)
)
)
)

Case No. 2 : 1 9 - MJ 0 1 2 8 - ____ EFB

# FILED

AUG 1 5 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## CRIMINAL COMPLAINT

I, Joshua Matas the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of February 7, 2017 to June 13, 2019 (21 U.S.C §§ 846, 841(a)(1)) and June 13, 2019 (21 U.S.C. § 841(a)(1)) in the county of El Dorado, Placer, and Sacramento in the Eastern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C §§ 846, 841(a)(1) | Conspiracy to Possess with Intent to Distribute Marijuana Plants and Tetrahydrocannabinols contained in Hashish Oil. |
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Marijuana Plants and Tetrahydrocannabinols contained in Hashish Oil |

This criminal complaint is based on these facts:

(see attachment)

☒  Continued on the attached sheet.

_____
*Complainant's signature*

DEA, Special Agent Joshua Matas
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  8-14-2019

_____
*Judge's signature*

City and state:  Sacramento, California

Edmund F. Brennan, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

## I.    INTRODUCTION

1.    I, Joshua Matas, Special Agent of the Drug Enforcement Administration (DEA), being duly sworn, depose and state:

2.    I am a Special Agent of the Drug Enforcement Administration (DEA), San Francisco Field Division and have been so employed since 2018. I have been assigned to the Sacramento District Office since November of 2018. Previously, I was employed by the City of Coral Gables and served in the capacity of a Police Officer for 2 years.

3.    I have received specialized training in narcotic investigation matters including, but not limited to, drug interdiction, drug detection, money laundering techniques and schemes, drug identification, and asset identification and removal, from the DEA. In addition, I graduated from the DEA Basic Agents Academy at the FBI Academy at Quantico, Virginia. In total, I have received in excess of 500 hours of comprehensive formalized classroom instruction in those areas outlined above.

4.    I have assisted in several investigations targeting individuals and organizations violating federal drug statutes. I have assisted in the execution of several search warrants at particular places or premises in search for controlled substances and/or related paraphernalia, indicia, and other evidence of violations of federal drug narcotics statutes. I have also assisted investigations by communicating with confidential informants involved in the trafficking of narcotics, and this has formed the basis of my opinions.

5.    As a result, I have encountered and become familiar with various tools, methods, trends, paraphernalia, and related articles utilized by traffickers in their efforts to import, conceal, manufacture, and distribute controlled substances domestically and internationally.

6.    Because this affidavit is submitted for the limited purpose of supporting the requested criminal complaint and an arrest warrants, I have not included the details of every aspect of the investigation. I have set forth only the facts that I believe are necessary to establish a foundation for the criminal complaint and arrest warrants.

## II. **PURPOSE**

7.       This Affidavit is made in support of the issuance of a Criminal Complaint charging Manish PATEL with violations of Title 21 U.S.C §§ 846, 841(a)(1) (Conspiracy to Possess with Intent to Distribute Marijuana Plants and Tetrahydrocannabinols contained in Hashish Oil) (from February 7, 2017 to June 13, 2019) and Title 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Marijuana Plants and Tetrahydrocannabinols contained in Hashish Oil) (on June 13, 2019). This Affidavit is also being made in support of the issuance of an arrest warrant on the above charges.

8.       Based on the facts set forth below, I believe Manish PATEL is distributing hundreds of pounds of marijuana throughout the United States for profit and is conspiring with others, thus generating millions of dollars of drug proceeds.

## III. **BASIS FOR FACTS AND CIRCUMSTANCES**

9.       The conclusions and opinions set forth below are based on my experience and training as a special agent, my direct participation in this investigation as described below, and conversations with other law enforcement officers who are familiar with the facts and circumstances of this investigation. Throughout this affidavit, all sentences that begin with the words "I believe" are based upon this combination.

10.      As detailed below, the probable cause supporting the issuance of a complaint and arrest warrant is based on an investigation that included the review of search warrants and reports generated by various law enforcement agencies assisting in this investigation, which I have reviewed.

## IV. **SUMMARY OF PROBABLE CAUSE**

11.      Since at least May 2019, investigators have collected evidence that Manish Patel, a licensed attorney in two East Coast states, has conspired to manufacture marijuana and concentrated cannabis oil in the Eastern District of California. Further, Patel has conspired to transport marijuana and concentrated cannabis oil across the country using his Learjet since at least August 2018 when the DEA interdicted Patel and several associates at an executive airport in Albuquerque, New Mexico and seized $80,000 in cash and evidence indicating large-scale interstate drug trafficking. In May and June 2019, law enforcement in California executed search warrants at three locations in the Eastern District of

1 California that resulted in the seizure of approximately 1,400 pounds of marijuana contraband and
2 $400,000 in cash.

## V.    STATEMENT OF FACTS

**A.    Manish PATEL**

12.    Manish PATEL is a licensed attorney in New York (admitted in 2015) and New Jersey
(admitted in 2017) and is affiliated with Sentient Law Group in New York. In late 2018, Placer County
Sherriff's Department (PCSD) Detective Lyssand accessed Sentient Law Group's website and observed
that PATEL is listed as the CEO. Detective Lyssand attempted to connect to ten hyperlinks listed under
"Practice Areas," however none of the links worked. As of August 5, 2019, the Sentient Law Group
website no longer identifies Patel as a practicing attorney related to Sentient Law group. Patel's CEO
business card, seized by police during the search warrants described herein, is shown below.



1       13.    In 2005 and again in 2011, Patel was arrested in New Jersey for marijuana related

2  offenses. It is likely that any convictions from the New Jersey arrests have been expunged or resolved

3  from his criminal history through a state diversion program. In 2015, however, Patel was arrested in

4  Shasta County for violations of California Health & Safety Code §§ 11359 (Possession for Sale of

5  Cannabis), 11360 (Transportation and Sale of Cannabis) and PC 182 (Conspiracy). The California

6  arrest stemmed from a traffic stop of a car in which Patel was the sole passenger, and the driver was

7  from New Jersey. A search of the car revealed 241 individually packaged 1 pound turkey bags of

8  processed marijuana, a box of additional packaging material, and over $6,000 cash. I continue to look

9  into the disposition of the Shasta County traffic stop, but it appears that PATEL was not criminally

10  charged.

11      **B.**    **2018 DEA Search of PATEL's Learjet at a New Mexico Airport**

12       14.    As set forth below, PATEL purchased a Learjet 25D, Tail No. N25CY (hereinafter, "the

13  Learjet"), for $345,000 in February 2017, and uses his private jet to fly around the country. PATEL

14  employs a team of certified pilots, typically paying them in cash, and his travel typically involves flying

15  from the East Coast to California, and returning to New Jersey or New York. On many occasions,

16  PATEL pays the pilots to fly his Learjet around the country containing only cargo and no passengers.

17       15.    On August 28, 2018 the DEA stopped PATEL as he boarded his Learjet in Albuquerque,

18  New Mexico. The DEA was conducting a "Ramp Check" of PATEL's Learjet 25D, Tail No. N25CY,

19  identifying the pilots as       and        . A search of the Learjet revealed

20  approximately $80,000.00 in cash, a cashier's check for $450,000.00, and 2 Apple laptops belonging to

21  the passengers of the plane, PATEL and       . The $80,000 in cash was found inside a

22  cardboard box: many bundles of vacuum-sealed stacks of cash ranging from approximately $8,000.00 to

23  $10,000.00 in cash.

24       16.    PATEL's and       's phones were seized by the DEA and revealed text

25  communications referencing the trafficking of narcotics from sources of supply in California to states

26  like New York and Florida, as well as laundering of drug proceeds through a complex network of

27  business accounts. The DEA further seized paperwork including various legal contracts, hand written

28  ledgers including pay/owe sheets, and pictures of       using paraphernalia commonly

associated with marijuana consumption.

17.     Since the searches described in detail below, law enforcement has reviewed documents and interviewed several individuals associated with PATEL's acquisition and use of the Learjet. Law enforcement interviewed ███████████████████ sold the Learjet to PATEL for $345,000 in February 2017. The transaction commenced on December 29, 2016 when PATEL deposited $44,650 into a bank account designated for the Learjet's purchase. ███████████ told law enforcement the Learjet's purchase price was $345,000 and that the transaction was remarkable because PATEL paid approximately $300,000 of the purchase price in cash. In late January or early February 2017, PATEL personally brought $300,350 in cash to ██████████ Florida, ████████████████ and PATEL and ████████ went to a Bank of America branch in ██████████ to have a teller count the cash. The $300,350 represented the balance of the purchase price after crediting the $44,650 deposited into the bank account in December 2016.

18.     The Learjet was purchased by PATEL, but title to the Learjet is held in an LLC out of Nevada. The Bill of Sale for the Learjet references a closing date of February 7, 2017.

**C.     Search of Commercial Property in El Dorado County**

19.     On or about May 9, 2019, El Dorado County Sheriff's Office (EDSO) detectives received information from an anonymous source that illegal marijuana activity was possibly occurring at a commercial property located at 4175 Business Drive, Suite D in Cameron Park (hereinafter, "Suite D"). The anonymous source described to law enforcement a heavy odor of marijuana emanating from the business and suspicious behavior by individuals associated with the location.

20.     On the morning of May 13, 2019, EDSO Detective Alonzo Aguilar contacted 4175 Business Drive's owner, ████████████ and property manager, ███████████████████ stated that he was aware of a complaint of marijuana odor at Suite D, and that he had responded to Suite D that morning (*May 13, 2019*) and observed active, functioning lab equipment in Suite D. A white male adult approached ████████████ and stated that the equipment was a "CBD extraction for hemp." ████████████ then called PATEL as he was listed on one of the documents associated with the lease for Suite D. PATEL told ████████ that he would look into the matter and call him back later.

21.     In the afternoon of May 13, 2019, EDSO detectives went to Suite D in order to hold the

1   location while a search warrant was obtained. When they arrived on scene, detectives located two

2   individuals, Kevin Healy ("Healy") and Tyler McClean, inside of Suite D. Both men were identified by

3   their New York driver licenses. Healy and Tyler McClean appeared to be working in an active

4   marijuana distillation lab. Tyler McClean identified a white Mercedes in the parking lot as his, and

5   DMV check of the white Mercedes revealed it was registered to William McClean or ▮▮▮▮ out

6   of Folsom, California. Kevin Healy identified a Ford Fusion as his, which was registered to ▮▮▮

7   ▮▮ out of Visalia, California.

8         22.     In the evening of May 13, 2019, law enforcement executed a warrant at Suite D and

9   observed an active lab designed to manufacture concentrated cannabis. There were two active

10   distillation machines, multiple 50 gallon drums of alcohol, a bucket containing suspected Hexane,

11   vacuum ovens, large amounts of glassware, air filters with ventilation hoses, dozens of metal pots,

12   hundreds of individual cartridges for hash oil vape pens, vacuum sealers, ethanol extractors, ice chests, a

13   money counter, and notes related to the manufacturing of concentrated cannabis. There was also a large

14   piece of stainless steel machinery in the lab, manufactured by Pope Scientific, Inc. EDSO Detective

15   Mike Roberts later researched the Pope Scientific, Inc. website and found the item, and determined that

16   it was used in the distillation process of cannabis refinement.

17         23.     Inside of Suite D, law enforcement seized over 980 pounds (net weight) of processed

18   marijuana and 88.27 pounds (combined net and gross weights) of concentrated cannabis from the

19   property. Detectives were unable to obtain an accurate net weight of all of the concentrated cannabis.

20   Due to its sticky nature, a significant amount of the concentrated cannabis could not be removed from

21   the storage containers. The net weight they confirmed was 53.55 pounds, however this weight did not

22   include the concentrated cannabis found in storage containers. Therefore, the true net weight of the

23   concentrated cannabis seized from the containers exceeded 53.55 pounds. In total, detectives seized

24   more than approximately 1,000 pounds of marijuana and concentrated cannabis from the marijuana lab

25   in Suite D. Suite D's lab and marijuana trunks as found by law enforcement on May 13, 2019:

26   ///

27   ///

28

 

24. During the search detectives also found linkages to marijuana trafficking in Placer County, California and indicia for PATEL, William McClean, and Tyler McClean. For example:

   a) In the area of Suite D devoted to the cannabis lab, detectives found a box with a label showing the parcel had been shipped to Manish PATEL at 4858 Cavitt Ranch Place in Granite Bay, California. This receipt indicated that the customer had the business name of "High Tech, LLC," a business associated with 8178 Belvedere Avenue in Sacramento, which is a known historical marijuana grow location as discussed below.

   b) During a search of Kevin Healy's Ford Fusion and Tyler McClean's Mercedes, law enforcement found materials commonly used to package marijuana such as turkey bags, vacuum bags, packing tape, and bubble wrap. In Tyler McClean's Mercedes, detectives found an automobile insurance card identifying William and Tyler McClean. On the card, the pair listed the 4858 Cavitt Ranch Place in Granite Bay, California as their address. The 4858 Cavitt Ranch Place location is hereinafter referred to as the "Granite Bay Residence."

25. Based on my training and experience, I believe that Suite D was being used as a laboratory to create concentrated cannabis oil, colloquially referred to as "hash oil," "honey oil," and

8

1  when dried, "dab," "shatter," or "wax." Honey oil is typically a waxy, oily substance, usually yellow in
2  color. It can be vaporized ("dabbed"), allowing the user to inhale the concentrated active
3  tetrahydrocannabinol ("THC"), a crystalline compound that is the main active ingredient of marijuana.
4  It is also easy to add to foodstuffs, creating "edibles". Honey oil can be made using a number of
5  different processes. However, a common – and dangerous – method involves packing a cylinder with
6  marijuana plant material, and injecting (often referred to in the business as "shooting" or "blasting")
7  solvent through the cylinder. The manufacturer typically uses the parts of the marijuana plant that are
8  not appealing to traditional smokers, which allows the grower to make money off parts of the plant that
9  were formerly sometimes just thrown away. The plant material is placed in the tube, and the solvent is
10 released into the top of the tube, which is held vertically. The solvent flows downward and dissolves the
11 cannabinoids/THC, which flow out of the bottom of the tube.

12        26.      Based on my training and experience, I know that marijuana, both in plant form and in
13 the form of concentrated cannabis oil, is a substance controlled under Schedule I, Title 21, United States
14 Code, Section 812.

15        27.      Kevin Healy and Tyler McClean were arrested on May 13, 2019 and booked into the El
16 Dorado County Jail for violations of California drug laws. Arrest warrants were also issued for PATEL
17 and William McLean for violations of California drug laws based on the May 13, 2019 search of Suite
18 D. As described below, PATEL was arrested in Sacramento after loading marijuana onto his Learjet and
19 is currently being held without bail in El Dorado County Jail.

20    **D.    Further Investigation into Suite D's Occupants and their Marijuana Lab**

21        28.      After the search on May 13, 2019, law enforcement continued its investigation into the
22 owners, operators, and facilitators of Suite D's illegal cannabis lab. As part of those efforts, law
23 enforcement obtained the lease agreement and other financial and business paperwork (*credit report,*
24 *banking documents*) that the tenants submitted to the property manager support the lease application for
25 4175 Business Drive, Suite D. Suite D's lease documents set forth the following about PATEL, William
26 McLean, and the proposed business at Suite D:

27        a)      The lease agreement stated that Suite D had been rented beginning on May 1, 2019 for
28             $3,500 per month. The lease was for a three-year term, with annual 3% increases and a

1      security deposit of $10,000, and was signed by William McClean on April 26, 2019.

2    b)    In the lease application package, McClean represented he made over $400,000 in income

3      in 2018.

4    c)    The property management company also provided email correspondence to EDSO

5      detectives, dated April 28, 2019, which contains William McClean's banking

6      information. This email was sent from a user identified as William McClean

7      (wbmproperties1010@icloud.com) to Manish PATEL (manish@sentientlawgroup.com),

8      and then forwarded from PATEL to ████████████ the secretary for the

9      property manager.

10    d)    A document titled "CONSENT TO OBTAIN CREDIT REPORT" was submitted to

11      support the lease application as a guarantee and contained PATEL's personal

12      information. Specifically, this consent form contained PATEL's date of birth, social

13      security number, and signature. On this form, which was dated April 24, 2019, PATEL

14      provided a street address of 64 Barbaree Way in Tiburon, California.

15    29.    In late May 2019, EDSO detectives contacted the Placer County Sheriff's Department

16 (PCSD) to connect about the linkages of the marijuana lab participants and 4858 Cavitt Ranch Place in

17 Granite Bay—*the Granite Bay Residence.* As described above, PATEL listed the Granite Bay

18 Residence as his delivery address on the parcel found at Suite D, and William and Tyler McClean listed

19 the same Granite Bay address on the insurance documents found in the vehicle parked at Suite D. PCSD

20 detectives relayed to EDSO that it had received a report of an altercation between William McClean and

21 PATEL at the Granite Bay Residence in December 2018. Furthermore, PCSD detectives had recently

22 opened a drug investigation into the occupants of the Granite Bay Residence after receiving information

23 about multiple vehicles (more than ten at a time) being parked at the Granite Bay Residence and

24 constant vehicle traffic at all hours.

25    30.    PCSD detectives learned that PATEL and others occupied the Granite Bay Residence as

26 of October 29, 2018 and paid rent of over $10,000 per month. On April 20 and April 30, 2019, PCSD

27 detectives observed purple lights shining through the opaque garage doors at the residence. At different

28 hours of the night, it appeared that the purple lights were suspended in the center of the usable garage

1  space. The lights appeared to rotate up and down and would stay on for several hours and then turn off,
2  indicating a timed lighting system was likely being utilized, similar to the systems commonly used in
3  indoor marijuana grows. Based on those observations and his knowledge and experience in law
4  enforcement, Detective Gualco formed the opinion that a marijuana grow was possibly inside of the
5  garage. PCSD detectives conducted surveillance of the Granite Bay Residence and, based on their
6  observations of the activity at the home, they concluded that marijuana was possibly being grown in the
7  residence's garage.

8       31.     Between April 25, 2019 and May 11, 2019, PCSD detectives observed multiple high end
9  vehicles, including a white Dodge Ram truck (CA license plate 65880M2) and a grey Mercedes Sprinter
10  van (CA license plate 04626G2) at the Granite Bay Residence. The Mercedes Sprinter van was
11  registered to High Tech, LLC, with an address of 8178 Belvedere Avenue in Sacramento. The Dodge
12  Ram was registered to William McClean, with an address of 1006 Mud Pie Lane in Sacramento. On
13  May 7, 2019, PCSD Detectives Lyssand and Gualco and observed William McLean at the Granite Bay
14  Residence.

15       **E.**     **Search of PATEL's Granite Bay Mansion**

16       32.     On May 30, 2019, law enforcement executed a search warrant at the Granite Bay
17  Residence. A male identified as ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ opened the front door of the house
18  and he was the only person present at the house. ▓▓▓ said he was a "live-in chef." Indicia located
19  inside the Granite Bay Residence identified PATEL, William McClean, ▓▓▓▓▓▓▓▓▓ as
20  occupants.

21  ///
22  ///
23  ///
24  ///
25  ///
26
27
28

1    33.    Throughout the house, detectives located processed marijuana, vacuum sealers, vacuum
2    sealing bags, concentrated cannabis/hash oil, branded marijuana products in a display case, documents
3    showing sales invoice/shipping manifest for marijuana, a money counter, cultivation documents (with
4    strains, harvest date and plant count), and other documents that support a large scale cultivation and
5    manufacturing hub.



14    34.    Law enforcement found documents, mail, and other indicia for PATEL in the Master
15    Bedroom of the house, including a Sentient Law Group business check book and an envelope with the
16    name "Naresh Patel" on it. A large safe was located in PATEL's bedroom, which contained a certificate
17    for a Learjet 25D, tail number N25CY, and a duffle bag with $389,310 in cash. The $389,310 in cash
18    was broken down into vacuum-sealed in rubber-banded stacks.

19
20
21
22
23
24
25
26
27
28



35.    In ▮▮▮▮ bedroom, detectives located: approximately $37,200 in cash ($3,000 in his bathroom and $34,200 in his nightstand), two large glass jars containing approximately ¼ to ½ pound of processed marijuana, a digital scale, a box for another digital scale, and a glass jar that had "Nug Forbidden Fruit $40" in the top label (which appeared to be a packaged marijuana product line). Detective Gualco also located documents showing a link to 8178 Belvedere Avenue, Sacramento, a known historical marijuana grow site.

36.    Detective Gualco then observed the Mercedes Sprinter Van (parked on the property near the front entrance) that had previously observed at the residence. When Detective Gualco opened the doors to the van, he immediately smelled the odor of marijuana emanating from inside the vehicle. He located numerous moving boxes inside the vehicle, with dirt and a strong odor of marijuana, and noticed soil and green leaves on the floor of the truck. The green leaves appeared to be from marijuana plants. Detective Gualco also walked around several cars parked outside the garage area and noticed similar soil and leaves around a white Dodge Ram truck belonging to William McClean.

37.    Detective Gualco walked around the garage and noticed water staining on the ground, which is where the painter was hired to put the epoxy. The staining appeared to have round circles and run off from suspected potting plants. Based on his training and experience, Detective Gualco believed

1  this staining was consistent with soil, fertilizer and water often used in indoor marijuana cultivation. He

2  also noticed several carbon monoxide tanks outside the garage, which are also used for indoor marijuana

3  cultivation. Additionally, several large "Pelican Brand" hard cases were outside of the door, which are

4  marketed as "water-tight vaults" and in Detective Gualco's training and experience are commonly used

5  to transport marijuana/concentrated cannabis products. Pelican Brand Cases form airtight seals and are

6  known to be used by drug traffickers to prevent detection from K9's. Inside of the Pelican cases,

7  Detective Gualco found scent packs commonly used by drug traffickers to mask and remove the odor of

8  marijuana.

9     **F.     Search of PATEL's Learjet**

10    38.     Following the searches of Suite D and the Granite Bay Residence, law enforcement

11  continued to investigate PATEL and learned that his Learjet had landed in Sacramento on June 9, 2019.

12  PATEL's Learjet was believed to be at Mather Air Field in Sacramento County. A flight plan for the

13  Learjet indicated that it would be in Sacramento for approximately 4 days before departing for the East

14  Coast on June 13, 2019. The flight plan showed the Learjet was scheduled to fly to Colorado, then

15  Illinois, and then New Jersey.

16    39.     On June 13, 2019, PCSD detectives conducted surveillance at Hangar #2 at 10510

17  Superfortress Avenue at Mather Field Airport in Sacramento County. At 10:15 am, Detective Gualco

18  arrived at Mather Field and saw the doors open to the hangar where the Learjet was parked. The ground

19  crew appeared to be getting ready to pull the plane out, but then left and closed the hangar door. As they

20  conducted surveillance, detectives observed two males and two vehicles near the hangar. The vehicles

21  were a Dodge Caravan bearing California license plate 8EDV674 (hereinafter, the "Dodge"), and Nissan

22  Maxima bearing New Jersey plate Y71JMR (hereinafter, the "Nissan"). The Nissan, which was

23  registered to Cho, was previously observed by detectives at the Granite Bay Residence.

24    40.     At approximately 11:15 a.m., one of the two males, later identified as ▮▮▮▮▮▮▮

25  ▮▮▮▮▮▮▮▮▮, exited the Nissan, which was parked near the Hangar #2, and walked into the

26  Hangar #2. ▮▮▮▮remained inside Hangar # 2 for a few minutes and then walked back out to the Nissan.

27  At approximately 12:00 pm, Detective Gualco saw the target hangar door open, and the Dodge drove out

28  of the hangar and exited the tarmac from the gate near the hangars. The Dodge pulled up next to the

1  Nissan and PATEL exited the driver's seat of the Dodge. ███ exited the driver's seat of the Nissan.

2  After talking for a few minutes, PATEL got into the driver's seat of the Nissan and ███ got into the

3  driver's seat of the Dodge. PATEL pulled out first in the Nissan and ███ followed behind him in the

4  Dodge. El Dorado County Sheriff's Detective Roberts conducted a vehicle enforcement stop on PATEL

5  and PCSD Detectives Lyssand and Gualco stopped ███ just down the road from Mather Field.

6      41.    As PCSD Detectives Lyssand and Gualco approached the passenger side of the Dodge to

7  contact ███ the detectives each smelled the odor of marijuana coming from the vehicle. ███ stated the

8  vehicle did not belong to him and he was driving for a friend. When Detective Gualco asked ███ who

9  he was driving for, he was initially very vague, but later admitted it was PATEL. Detective Gualco

10 asked about what was inside the vehicle and ███ stated he was not sure. ███ admitted to Detective

11 Lyssand that he was staying at the Granite Bay Residence and was going back there with PATEL. ███

12 told Detective Lyssand that he believed he was in a legal marijuana business with PATEL.

13     42.    Following a positive K9 alert, law enforcement searched the Dodge and found three large

14 boxes in the trunk. Two of the boxes had commercially packaged marijuana products inside of them,

15 and the third box had clear plastic bags with a green leafy substance that appeared to be marijuana. In

16 total, the Dodge contained 877 individual packets of marijuana, each weighing approximately 7 grams;

17 and 9 vacuum sealed bags of marijuana, weighing approximately 1 pound each; additional smaller bags

18 of suspected marijuana were also found.

19     43.    EDSO Detective Roberts stopped PATEL's Nissan and told PATEL that he was subject

20 to an arrest warrant (issued out of El Dorado County, as explained in ¶ 27). PATEL asked if the arrest

21 warrant was "federal or state." Detective Roberts then searched PATEL and found a BMW key in the

22 right front pocket of his jeans. In the Nissan's trunk, Detective Roberts located two Ganja Gold vape

23 pen cartridge boxes with one full vape pen cartridge. The label on the packaging said the cartridge

24 contained marijuana.

25     44.    Law enforcement subsequently obtained an executed a warrant for Hangar #2, which

26 housed the Learjet 25D and Patel's BMW I8. Inside the Learjet, detectives found a white envelope

27 with the marking "B&H (6K)" written in black sharpie on the exterior. $6,000 cash was found inside of

28 the white envelope. A further search of the Learjet resulted in the seizure of approximately 47 boxes

1  and odor concealer. The boxes contained vacuum sealed marijuana bud, containers of dried marijuana

2  bud in commercial packaging, vape pens with concentrated cannabis in commercial packaging, and

3  concentrated cannabis edibles. In total, 181.51 net pounds of dried marijuana and 18.41 net pounds of

4  concentrated cannabis were seized from the Learjet.

 

18  45.  The Learjet pilots, ███████████████ were contacted when they tried to

19  access Hangar #2. ██████████████ said they were contract pilots hired to fly the Learjet and

20  PATEL to Morris Town, New Jersey. ████████ said he flew PATEL to and from Morris Town, New

21  Jersey approximately 10-12 times in 2018 and 5-6 times in 2019. ████████ also said that he had flown

22  PATEL to Houston, Texas on another occasion.

23  46.  ████████ also explained that he first flew for PATEL on February 27, 2017, and that he

24  averaged 1-2 flights per month in the Learjet. PATEL paid ████████ for each flight in cash. ██

25  ██ recalled flying PATEL from California to New Jersey with the Learjet full of what he described

26  as suspicious boxes or cargo approximately six different times. ████████ said that on two occasions,

27  PATEL made a last minute decision not to travel with his cargo. PATEL had also provided specific

1    directions not to allow any search of the Learjet during fuel stops without consulting him.

2       47. ███████ also provided a specific trip summary for PATEL's jet from February 2018.

3 The summary states that the company is "Sentient Law Group, P.C." (Patel's law firm in New York) and

4 that the plane was scheduled to fly from Jacksonville, FL to Havana, Cuba, on February 7, 2018 and

5 then from Havana to Ft. Lauderdale, FL on February 12, 2018. Patel and four other men (████████

6 ████████████████████████████████████████) were listed as passengers on each flight leg.

7 ███████ explained that PATEL pressured him to fly to Havana, despite the fact that he did not have

8 the proper paperwork or authority to do so. ███████ refused to fly the plane to Cuba after engaging in

9 a verbal disagreement with PATEL. ███████ also recalled flying PATEL to Oregon for meetings, and

10 said that PATEL also rented a hangar in Hayward until approximately one year prior, when he began

11 renting Hangar #2 at Mather.

12     **G.**    **Search of Sacramento Industrial Building Connected to PATEL**

13       48.    PCSD Detective Gualco also connected PATEL to 8178 Belvedere Avenue, Sacramento,

14 CA (hereinafter, "Belvedere Avenue"), as early as October 23, 2018. PATEL was connected to 8178

15 Belvedere Avenue through: (1) the grey Sprinter van discussed above, and (2) documents for the

16 machinery used to produce marijuana concentrate at the Granite Bay Residence.

17       49.    On May 11, 2019, Placer County Detectives Lyssand and Gualco conducted surveillance

18 at Belvedere Avenue. Detective Gualco spoke with an elderly male who was working at an adjacent

19 building. The male said that the entire warehouse was a commercial style marijuana grow and

20 numerous vehicles would be in and out throughout the day. Detectives Lyssand and Gualco then set up

21 to observe the vehicles entering and existing the commercial grow space at Belvedere Avenue.

22       50.    Detective Gualco observed a grey Ford F-150, California license 83953J2 owned by an

23 individual named ███████. Detective Lyssand viewed the DMV photograph of ███ and confirmed

24 he saw ███ exit the Ford. There were several large boxes in the back of the pickup. ███ entered

25 Belvedere Avenue and exited within minutes with several other white male adults and the group

26 unloaded the boxes. Detective Lyssand also saw ███ pick up a large tank that appeared to be some

27 sort of liquid fertilizer. The group, including ███, entered and exited Belvedere Avenue more than 4

28 times within an hour period.

1    51.  PCSD Detective conducted further investigation into the occupants of Belvedere Avenue.

2  On July 2, 2019, the following information was provided by an employee of the City of Sacramento's

3  Office of Cannabis Policy and Enforcement:

4         a)    An individual named ███████████ applied for three cannabis Business

5               Operating Permits, at Belvedere Avenue, as follows: Cultivation, Suite A/B, 3/2/2018;

6               Manufacturing, Suite F, 5/24/2018; Distribution, Suite A/B 11/28/2018.  Due to a

7               contractor's complaint, the Sacramento Fire Department and Office of Cannabis Policy

8               and Enforcement attempted to inspect the site on February 13, 2019.  No one answered at

9               the door, so the City reached out to the contact listed on the application, ███████

10              who informed them that no one in the area had a key to the building.  However, it

11              appeared to the City inspectors that someone was possibly inside suite A.  They reached

12              out to the building owner who informed them that he was in the Bay Area. ███████

13              ███████ informed them that they would have to fly PATEL from New York as he was

14              the only person who had a key to the building.  A meeting with PATEL at Belvedere

15              Avenue was set for the next day, February 14, 2019.  That night, at approximately 6 pm,

16              the City of Sacramento's Office of Cannabis Policy and Enforcement returned to the

17              building.  They observed active lighting in Suite A and a heavyset white male moving

18              large black trash bags around inside.

19         b)   On Friday, February 14, 2019, PATEL arrived around 10:00 am and provided access to

20              Belvedere Avenue Suites A, B, and F.  The suites were largely empty except for a lot of

21              trash.  PATEL gave them verbal approval to search the garbage. ███████████

22              Sacramento Fire Department took photographs and it appeared there was evidence of

23              cannabis vape cartridge production and other evidence indicating that there was likely

24              extraction occurring in at least one of the suites.

25         c)   The Office of Cannabis Policy and Enforcement formally notified the applicant that two

26              of the applications for cannabis operating permits would be denied on June 3, 2019.  The

27              Office of Cannabis Policy and Enforcement spoke with PATEL over the phone at 12:07

28              pm on June 10, 2019 and they discussed the appeal process. PATEL submitted an appeal

on June 12, 2019. Since then, ███████████ PATEL's partner at Sentient Law

Group in New York, appears to have taken over the appeal process.

**H.    PATEL's visits to the El Dorado Jail and Law Enforcement's Subsequent Interviews Related to the Cannabis Lab found at Suite D.**

52.    As described above in ¶ 27, Tyler McClean and Kevin Healy were arrested on state drug law violations after law enforcement discovered the illegal cannabis lab at Suite D. Following Tyler McClean's and Healy's arrests, but before he was personally arrested on June 13, 2019, PATEL went to the El Dorado County jail and identified himself as the attorney for both Tyler McClean and Kevin Healy. According to jail records, PATEL visited the jail on May 15, May 19, May 20, and June 10, 2019. Based on PATEL's identification as their attorney, he was able to meet with Tyler McClean and Kevin Healy in a non-recorded setting during each visit. According to the California Bar website identifying attorneys licensed in the state, PATEL is not a licensed attorney in California.

53.    On June 12, 2019, law enforcement spoke to ██████████ about his involvement with Suite D's tenants. ██████████ stated the following:

a)    ██████████ called PATEL after the May 13, 2019 search at Suite D. On or about May 20, 2019, PATEL returned the phone call and asked ██████████ he could tour the property that day. ██████████ agreed and facilitated the tour with himself, PATEL, and the property owner the same day. During the tour, PATEL acted surprised about the marijuana production equipment and miscellaneous items remaining in Suite D after the May 13, 2019 search. PATEL requested permission to hire a moving company to remove the remaining these items from Suite D. In the days following, a moving company went to Suite D to remove all the items left inside after the search.

b)    ██████████ also told law enforcement that PATEL text messaged him about returning the security deposit back. In a text message, PATEL told ██████████ that William McClean asked PATEL to argue for the deposit back. PATEL asked if they could "come to an agreement without getting litigious," and claimed William McClean was "innocent" in the matter. PATEL said that William McClean's brother, Tyler McClean, put William McClean in a precarious position, and described the matter as "an overall disaster." A

series of text messages followed, in which PATEL discussed the recovery of the security deposit and various other expenses related to Suite D's occupancy.

54. On June 12, 2019, law enforcement interviewed ████████████, the property manager's secretary, who said ██ recalled conversing with two men, identifying William McClean and his attorney, PATEL, by name. ████████████ recalled the following concerning ██ interactions with PATEL and William McLean:

a) Their conversations began via phone in late April 2019 and the pair was interested in leasing a warehouse-type commercial business space managed by her company.

b) ████████████ interacted with PATEL and McLean several times and they represented to ████████████ that the commercial space was needed to build, install, and fabricate metal shelving for their business, BKM Contracting, LLC.

c) ████████████ recalled meeting in person with ████████████ and PATEL and William McClean on April 23, 2019. William McClean indicated that he was the business owner, and PATEL represented himself as McClean's lawyer. ████████████ recalled that both men drove what appeared to be extremely expensive cars.

d) On April 23, 2019, PATEL and William McClean toured Suite D, and William inspected Suite D's electrical box. ████████████ said that both appeared pleased with Suite D and verbally agreed to lease it. ████████████ drafted the lease and began communicating with PATEL and William McClean via email, with the lease being executed via "Docu-sign," a service that facilitates signatures via mobile applications and email.

e) On or about April 29, 2019, the rental contract was finalized, and PATEL picked up the keys to Suite D.

55. On June 12, 2019, law enforcement spoke to ████████████, business owner at a ████████████ to Suite D. ████████████ told law enforcement the following:

a) ████████████ working i████████████ n the day the potential new tenants toured Suite D [*believed to be April 23, 2019, as described in ¶ 54(d)*]. ████████████ observed two new expensive BMW's pull up, which were driven by two men. ████████████ described one of the vehicles as a BMW I-8 hybrid sports car. ██ said that ██ was intrigued by the

BMW I-8, so ██ introduced ████ to the driver and briefly spoke to ██. ████
identified PATEL as the driver of the BMW I-8.

b) When the lease started on May 1, 2019, ████████ observed multiple males in their twenties and thirties showing up at Suite D at odd hours of the day. ██ said that the males often changed their clothes before entering the business, and recalled seeing a new Sprinter type van coming and going from the property. ████████ said that when the Sprinter van arrived, it would go to the garage door and immediately go inside of the property. The Sprinter van typically stayed for short periods of time. ████████ said that when the van showed up, he would smell the distinct odor of marijuana.

c) ████████ also observed that the doors to the property remained closed and the blinds were kept shut. ████████ said that ██ saw PATEL at the business a total of three times, and when he came to the business, PATEL would not park his vehicle in Suite D's assigned parking. ████████ interpreted this as an attempt to distance himself from possible law enforcement investigations.

## VI.  CONCLUSION

56.    Based on the foregoing, I believe that probable cause exists to believe that Manish PATEL, has committed violations of Title 21 U.S.C §§ 846, 841(a)(1) (Conspiracy to Possess with Intent to Distribute Marijuana Plants and Tetrahydrocannabinols contained in Hashish Oil), and Title 21 U.S.C. § 841(a)(1) (Possession with Intent to Distribute Marijuana Plants and Tetrahydrocannabinols contained in Hashish Oil).

## VII.    SEALING REQUEST

57.    The United States requests that the Court order this warrant affidavit and all accompanying filings be kept under seal until further order of the Court. The affiant states that the criminal investigation against Manish PATEL and others is continuing, and further interviews, grand jury appearances, and search warrants are contemplated. Disclosure of the contents of this affidavit could seriously impede the investigation by disclosing details of the government's investigation. The targets and subjects of the investigation would be able to learn some of the present extent of the

1 | government's knowledge. Accordingly, the affiant requests that the Court issue an order sealing this

2 | affidavit until further order of this Court.

3 |      I swear, under the penalty of perjury, that the foregoing information is true and correct to the best

4 | of my knowledge, information, and belief.

5

6 | _____

7 | Joshua Matas
  Special Agent

8 | Drug Enforcement Administration

9 | Approved as to form:

10

11 | _____
  Vincenza Rabenn

12 | Kevin C. Khasigian
  Assistant United States Attorneys

13

14 | Sworn and Subscribed to me on August 14, 2019,

15

16 | _____
  Hon. Edmund F. Brennan

17 | United States Magistrate Judge
  Eastern District of California

18

19

20

21

22

23

24

25

26

27

28